SEYFARTH SHAW LLP
Andrew M. Paley (SBN 149699)
apaley@seyfarth.com
Elizabeth M. Levy (SBN 268926)
elevy@seyfarth.com
Ashley D. Stein (SBN 305094)
astein@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile:   (310) 201-5219

Attorneys for Defendant
DEPLOYED SERVICES, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMANTHA FLORES, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEPLOYED SERVICES, LLC, a Nevada Limited Liability Company; ROZANA SAHAMI, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. **'25CV288  AJB  MMP**<br><br>CLASS ACTION<br><br>**DEFENDANT DEPLOYED SERVICES, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>(San Diego County Superior Court Case 24CU031320C)<br><br>Complaint Filed: December 31, 2024<br>Trial Date: None Set |

316019301v.2

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF SAMANTHA FLORES AND HER COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that Defendant DEPLOYED SERVICES, LLC ("Deployed" or "Defendant") hereby files this Notice of Removal pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453, based on Class Action Fairness Act ("CAFA") jurisdiction and removes the above-captioned matter from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California. Removal is proper for the following reasons:

**I.    BACKGROUND AND PROCEEDINGS IN STATE COURT**

1.    On December 31, 2024, Plaintiff Samantha Flores ("Plaintiff") filed a class action Complaint in the Superior Court of California, County of San Diego, entitled "SAMANTHA FLORES, an individual and on behalf of all others similarly situated, v. DEPLOYED SERVICES LLC, a Nevada Limited Liability Company; ROZANA SAHAMI, an individual, and DOES 1 through 100, inclusive." The Complaint was assigned San Diego County Superior Court Case No. 24CU031320C.

2.    On January 8, 2025, Plaintiff served the summons, Complaint, and other court documents on Defendant. (Declaration of Ashley Stein ("Stein Decl."), ¶¶ 2-3, Ex. A-B.)

3.    Defendant's Answer to the Complaint was filed on February 7, 2025 in San Diego Superior Court**.** (Stein Decl., ¶ 4, Ex. C.) No other filed pleadings or orders have been served on Defendant as of the date of this filing. (Stein Decl., ¶ 5.)

4.    To the best of Defendant's knowledge, individual defendant Rozana Sahami ("Sahami", collectively with Deployed, "Defendants") has not been served with the Summons and Complaint as of the date of this filing. (Declaration of Elizabeth McCormack ("McCormack Decl.") ¶11.)

## II.    TIMELINESS OF REMOVAL

1.      The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

2.      The service of process which triggers the 30-day period to remove is governed by state law.  *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

3.      11.      This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint, by personal service on Defendant's agent for service of process, on January 8, 2025.  Cal. Code Civ. Proc. § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery."); 28 U.S.C. § 1446(b).  Thirty (30) days from the service of the Complaint on Defendant on January 8, 2025 is February 7, 2025.

4.      The Complaint alleges eleven (11) causes of action against Defendants, for: (1) Failure to Pay All Overtime Wages; (2) Failure to Pay Minimum Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Waiting Time Penalties; (6) Wage Statement Violations; (7) Failure to Timely Pay Wages; (8) Failure to Indemnify; (9) Failure to Pay Interest on Deposits; (10) Violation of Labor Code § 227.3; and (11) Unfair Competition.  (Exhibit ("Ex."). A, Complaint ("Compl.").)

DEFENDANT DEPLOYED SERVICES, LLC'S NOTICE OF REMOVAL
316019301v.2

5.     The Complaint seeks to certify a class of "[a]ll current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class."  (Ex. A, ¶ 27.)  As the Complaint was filed on December 31, 2024, for purposes of the calculations in this Notice of Removal only, the relevant time period is from **December 31, 2020 until the present**.

## III.   JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")

6.     This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. Section 1332(d)(2).  As set forth below, this action is properly removable, pursuant to 28 U.S.C. Section 1441(a), in that this Court has original jurisdiction over the action, because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the action is a class action in which at least one putative class member is a citizen of a state different from that of a defendant. 28 U.S.C. §§ 1332(d)(2) & (d)(6).

### A.     Plaintiff And Deployed Are Minimally Diverse

7.     CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a State different from any named defendant. 28 U.S.C. 1332(d)(2)(A); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (explaining that to achieve its purposes CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement in 28 U.S.C. § 1332(d)(2)). Here, such minimal diversity exists among the parties.

#### 1.     Plaintiff Is a Citizen of California

8.     For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common

4

law a party must … be domiciled in the state"). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

9.     Plaintiff alleges that she "is a resident of the State of California." (Ex. A, ¶ 2.) Plaintiff alleges wage and hour claims on behalf of herself and a putative class of "all current and former non-exempt employees of Defendants within the State of California," contending that "Defendants employed numerous Class Members in San Diego County." (Ex. A, ¶¶ 13, 27.)

10.     As a part of Plaintiff's Application for Employment, Plaintiff listed a California address and maintained a California address on file for purposes of her personnel file, payroll checks, state payroll, and tax withholdings during the period of her employment. (McCormack Decl., ¶5.) Plaintiff was employed by Deployed and actively worked at its location in California, from November 17, 2023 to May 9, 2024. (Id.) Defendant is informed and believes, and on that basis alleges, that Plaintiff's last known address also is in California; according to a public records search, Plaintiff currently resides in California. (Stein Dec. ¶7, Ex. D). Plaintiff's intent to remain domiciled in California is further evident from the fact that she brought her lawsuit against Defendant in San Diego County Superior Court. Accordingly, Plaintiff is a citizen of California for the purposes of diversity.

DEFENDANT DEPLOYED SERVICES, LLC'S NOTICE OF REMOVAL
316019301v.2

### 2.    Defendant Is Not A Citizen of California

11.    Defendant Deployed Services, LLC is not now, and has not been, at any time since the filing of this action, a citizen of the state of California within the meaning of 28 U.S.C. § 1332(c)(1).

12.    For purposes of a "minimal diversity" class action, an unincorporated association is a citizen only of the state under whose laws it was organized or where it has its principal place of business. 28 U.S.C. § 1332(d)(10).

13.    Courts determine an entity's principal place of business under the "nerve center" test. *Hertz Corp. v. Friend*, 599 U.S. 77, 92-93 (2010). Under that test, a entity's principal place of business is where its "officers direct, control and coordinate the corporation's activities." *Id*. at 92.  A entity typically directs and coordinates its activities from its headquarters. *Id*.

14.    Deployed Services, LLC was formed under the laws of the State of Nevada, with its principal place of business located outside of California.  (McCormick Decl., ¶ 3-4.)  Deployed Services, LLC's high-level executives reside in and control the operations of Deployed Services, LLC from several states and locations on the East Coast of the United States, including New Hampshire, South Carolina, Tennessee, and the Washington DC area.  (*Id.*)  None of Deployed Services, LLC's executive and administrative functions occur in California.  (*Id.*)  Deployed Services, LLC's principal place of business is located outside of California because its "nerve center" is located in several states and locations on the East Coast and not in California.  (*Id.*)

Accordingly, because Plaintiff is a citizen of California and Defendant is not a citizen of California, diversity of citizenship exists between Plaintiff and Defendant for purposes of CAFA removal.

### 3.    Doe Defendants' Citizenship Must Be Disregarded

15.    The residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not

required to join in a removal petition); *see also Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (doe defendants need not join in removal); *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal). Thus, Doe defendants 1 through 50 do not deprive this Court of jurisdiction.

### 4.    The Citizenship of Individual Defendant Rozana Sahami is Immaterial as There is Minimal Diversity Between Plaintiff and Defendants as Required by CAFA

16.    As noted above, Plaintiff is a citizen of California, and Deployed is not. Therefore, there is minimal diversity because at least one putative class member, Plaintiff, is a citizen of a different state than one defendant, Deployed. 28 U.S.C. § 1332(d)(2)(A). As such, the citizenship of individual defendant Sahami is irrelevant to the jurisdictional analysis. *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 US 161, 165 (2014) (minimal diversity means that a court may exercise jurisdiction over the class action if "any member of the class of plaintiffs is a citizen of a State different from any defendant").

### 5.    All Defendants Properly Named And Served Have Consented To The Removal

17.    Pursuant to 28 U.S.C. § 1446(b)(2)(A), "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Aside from Deployed, there is one other defendant in this action, Sahami, who does not appear to have been served as of the date of the filing of this Notice of Removal. (McCormack Decl., ¶ 11; Stein Decl. ¶ 7.) As Sahami has not been served and therefore has not been joined in this action as of the time of the removal, she need not join this Notice of Removal to effect the removal. *Destfino v. Reiswig*, 630 F.3d 952, 955 (9th Cir. 2011) (those named as defendants but not yet served in the state court action need not join the notice of removal).

### B.    The Number of Putative Class Members Exceeds 100

18.    CAFA requires that the aggregated number of members of all classes proposed in a complaint be at least 100. 28 U.S.C. § 1332(d)(5)(B).

19.    Plaintiff seeks relief on behalf of a putative class comprised of [a]ll current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class." (Ex. A, ¶ 27.) Additionally, Plaintiff alleges that there are over 75 class members. (Id. at ¶ 30.)

20.    During the alleged putative class period, approximately 1,394 non-exempt employees were employed in California, including 1,016 former employees. (McCormick Decl., ¶ 7.)

21.    Accordingly, the aggregated number of members of the putative class proposed by Plaintiff exceeds the 100 member requirement.

## C.    The Amount in Controversy Exceeds The Statutory Minimum

22.    CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40. The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id*. at 42-43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be

DEFENDANT DEPLOYED SERVICES, LLC'S NOTICE OF REMOVAL

316019301v.2

read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

### 1.    Preponderance Of The Evidence Standard.

23.    Plaintiff's Complaint does not allege the amount in controversy for the class she purports to represent.  Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum.  In *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 588 (2013), the U.S. Supreme Court held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard.  *Accord Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

24.    In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the *preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)."  Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we therefore apply the preponderance of the evidence burden of proof to the removing defendant").  The defendant must show that it is "more likely than not" that the jurisdictional threshold is met.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular

DEFENDANT DEPLOYED SERVICES, LLC'S NOTICE OF REMOVAL

amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy [is met]. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at \*2 (E.D. Cal. July 14, 2010) (same).

25.   To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S.Ct. 547, 554 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases.  First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'") (emphasis added).

26.   The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages."  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

27.   It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged."  *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, \*3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

DEFENDANT DEPLOYED SERVICES, LLC'S NOTICE OF REMOVAL

316019301v.2

28.     As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino,* 506 F.3d at 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

### 2.     The Court May Assume A 100% Violation Rate Based On Plaintiff's Class-Wide Allegations.

29.     If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

*Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations … Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform … policies were applied to **all** putative class members reasonable") (emphasis added); *Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have

11

experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

30.     Numerous other district courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate.  *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where the plaintiff offers no evidence rebutting this violation rate"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.'  It also alleges that Defendants had a practice of 'requiring

DEFENDANT DEPLOYED SERVICES, LLC'S NOTICE OF REMOVAL

316019301v.2

employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

31.     The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000.  Plaintiff's Complaint seeks to certify, and seeks relief on behalf of, "[a] all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class." (Compl., ¶ 27.)  Therefore, for purposes of the calculations in this Notice of Removal, the "relevant time period" is from **December 31, 2020 until the present**.

32.     During the relevant time period identified in the Complaint, Defendant employed approximately 1,394 non-exempt hourly employees in California, who worked a total of approximately 38,879 workweeks.  (McCormick Decl., ¶¶ 7-8.)  The average hourly rate of pay for these individuals is approximately $20.24  per hour during the proposed class period.  (Id. at ¶ 9.)

33.     Plaintiff seeks to recover, on behalf of herself and the alleged class, penalties for Defendant's alleged failure to pay all wages due upon resignation or termination of employment and failure to provide accurate and complete itemized wage statements. (Ex. A, Prayer for Relief.)  Plaintiff also seeks attorneys' fees and costs.  (Id.)

34.     As set forth below, the alleged amount in controversy implicated by the class-wide allegations exceeds $5,000,000.  **All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any**

316019301v.2

admission of the truth of the facts alleged and assuming solely for purposes of this Notice of Removal that liability is established.

### 3.    Meal and Rest Period Claims (Plaintiff's Third and Fourth Causes of Action)

35.    Plaintiff seeks payments for alleged denial of or missed or interrupted meal periods and rest periods.  (Ex. A, ¶¶ 17-18.)  Plaintiff's Complaint alleges that "[f]or at least four (4) years prior to the filing of this Action and continuing to the present, Defendants have, at times, failed to provide Plaintiff and Class Members, or some of them, full, timely, thirty (30) minute uninterrupted meal period for days on which they worked more than five (5) hours in a work day and a second thirty (30) minute uninterrupted meal period for days on which they worked in excess of ten (10) hours in a work day, and failing to provide compensation for such unprovided meal periods as required by California wage and hour laws."  (Id. at  ¶ 17.)  Plaintiff further alleges that "[b]y their failure to provide Plaintiff and Class Members compliant meal periods as contemplated by Labor Code section 512, among other California authorities, and failing, at times, to provide compensation for such unprovided meal periods, as alleged above, Defendants willfully violated the provisions of Labor Code section 512 and applicable Wage Orders."  (Id. at  ¶ 55.)

36.    For these alleged meal period violations, Plaintiff seeks "the full amount of [Plaintiff's and Class Members'] unpaid additional pay for unprovided compliant meal periods, in amounts to be determined at trial, plus interest and penalties thereon, attorneys' fees, and costs, under Labor Code sections 226 and 226.7, Code of Civil Procedure sections 1021.5 and 1032, and Civil Code section 3287."  (Ex. A, ¶ 57.)

37.    Plaintiff's Complaint further alleges that "[f]or at least four (4) years prior to the filing of this Action and continuing to the present,  Defendants have, at times, failed to provide Plaintiff and Class Members, or some of them, to take rest periods of at least ten (10) minutes per four (4) hours worked or major fraction thereof and failed to provide compensation for such unprovided meal periods as required by California wage and hour

DEFENDANT DEPLOYED SERVICES, LLC'S NOTICE OF REMOVAL

laws." (Id. at ¶ 18.) Plaintiff claims that "[b]y their failure, at times, to authorize and permit Plaintiff and Class Members to take rest periods contemplated by California law, and one (1) additional hour of pay at the employee's regular rate of compensation for such unprovided rest periods, as alleged above, Defendants willfully violated the provisions of Labor Code section 226.7 and applicable Wage Orders." (Id. at ¶ 63.)

38.    For these alleged rest period violations, Plaintiff seeks "the full amount of [Plaintiff and Class Members'] unpaid additional pay for unprovided compliant rest periods, in amounts to be determined at trial, plus interest and penalties thereon, attorneys' fees, and costs, under Labor Code sections 226 and 226.7, Code of Civil Procedure sections 1021.5 and 1032, and Civil Code section 3287." (Ex. A, ¶ 65.)

39.    California Labor Code Section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ." Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ." California Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods or rest periods. Case law makes clear that an employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

40.    The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years. *Murphy v. Kenneth Cole Prods.*, Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). However, Plaintiff alleges a claim for meal and rest break premiums pay as part of her unfair competition claim under Business and Professions Code section

17200, *et seq.* (Ex. A, ¶¶ 55-60.) Although Defendant contends that meal and rest break premium pay cannot be recovered under Business and Professions Code section 17200 (*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010)), according to the allegations of Plaintiff's Complaint, the four-year statute of limitations applies for purposes of removal. Cal. Bus. & Prof. Code § 17208. Thus, for determining the amount in controversy, the four-year statute of limitations applies.

41.     Plaintiff is silent as to the amount of alleged meal periods or rest periods she claims to have been denied, thereby precluding precise estimates of the amount in controversy. However, Plaintiff alleges that Deployed had a practice of not providing the putative class with all meal periods and rest breaks, and that Plaintiff's claims are "typical of those claims which could be alleged by any Class Members, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions." (Ex A., ¶ 33). Accordingly, a 100% violation rate can properly be assumed for purposes of calculating the amount in controversy of Plaintiff's meal period claims. *See Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc.*, 482 U.S. at 392 (finding a 100 percent violation rate appropriate when "plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%"); *Wheatley v. MasterBrand Cabinets, LLC*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding an estimate of five meal period violations per week reasonable where plaintiff alleged a "a policy and practice" of meal and rest break violations); *Agredano v. Sw. Water Co.*, 2017 WL 2985395, at *6 (C.D. Cal. May 30, 2017) ("Plaintiff further alleges that Defendants 'routinely' and 'consistently' failed to provide him and the putative class members with the required 30–minute lunch break periods. Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed fewer than five legally required meal breaks per week. Thus, the Court finds that 'Plaintiff's own complaint alleges universal violations of meal... period laws' such that Defendants' 'use of a 100% violation rate [five missed meal periods] is proper.'"); *Mejia v. DHL Express (USA), Inc.*,

16

316019301v.2

2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding an estimate of five missed rest periods a week reasonable where plaintiff alleged that defendant maintained "policies, practices and procedures that caused the purported violations…").

42.    While Defendant is entitled to assume a 100 percent violation rate (*i.e.*, five missed meal periods and five missed rest periods per workweek) based on the allegations in the Complaint, Defendant will conservatively assume that putative class members were not provided just one meal period and one rest period each week.  Where Plaintiff has alleged a policy and practice of meal period and rest break violations, it is reasonable to assume that there are at least one meal period violations and one rest break violation each week for every employee.  Indeed, district courts have consistently upheld even higher assumptions of meal period and rest period violations as plausible for purposes of determining the amount in controversy.  *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding an estimate of five meal period and three rest break violations per week reasonable where Plaintiff alleged a "a policy and practice" of meal and rest break violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) ("Defendant conservatively assumed the putative class members were not provided … three of ten rest periods they were entitled to receive each work week, even though assumption of a 100 percent violation rate may have been reasonable based on allegations in the Complaint. The Court therefore we finds Defendant's assumed violation rates reasonable"); *Agredano v. Sw. Water Co.*, 2017 WL 2985395, at *6 (C.D. Cal. May 30, 2017) ("Plaintiff further alleges that Defendants 'routinely' and 'consistently' failed to provide him and the putative class members with the required 30–minute lunch break periods.

43.    As stated above, during the relevant time period identified in the Complaint, Defendant employed approximately 1,394 non-exempt, hourly employees in California from December 31, 2020 through the present date, who worked a total of approximately 38,879 workweeks.  (McCormick Decl., ¶ 7.)  The average hourly rate of pay for these

DEFENDANT DEPLOYED SERVICES, LLC'S NOTICE OF REMOVAL

316019301v.2

individuals is approximately $20.24 per hour during the proposed class period. (Id. at ¶ 9.)

44. Although Defendant denies that Plaintiff (or any putative class member) is entitled to any meal or rest period premium payments, assuming **just one meal period violation and one rest period violation per week** for each putative class member, the amount in controversy would be approximately $1,513,821.92[(38,879 workweeks) * ($20.24 per hour) * (2 premium payments each week)]. Accordingly, the amount in controversy on Plaintiff's meal and rest period claims is approximately **$1,513,821.92.**

### 4. Failure to Timely Pay Wages (Plaintiff's Seventh Cause of Action)

45. Plaintiff alleges that "Defendants employed policies and practices that resulted in, at times, not paying Plaintiff and Class Members in accordance with Labor Code section 204." (Ex. A, ¶ 86.)

46. Labor Code § 210 outlines the remedy for violations of Labor Code § 204, providing an employee a minimum of $100.00 for the initial pay period in which a violation occurs, and $200.00 for each further pay period in which a violation occurs plus 25% of the amount unlawfully withheld. The statute of limitations for penalties under Labor Code § 210 is one year. Cal. Civ. Proc. Code § 340(a).

47. Since December 31, 2023 the total number of weekly pay periods worked by the putative class members in California was approximately 22,228. (McCormick Decl. ¶ 9.) Plaintiff included no limitation on the number of alleged violations related to timely payment of wages, and in fact, her allegations support that she is contending that she and the putative class members did not receive all wages owed each pay period. By multiplying the number of pay periods per putative class member by the potentially applicable penalties ($100.00 for a first violation, $200 for any subsequent violation), the total amount in controversy for the Labor Code § 210 claim is at least **$4,369,100.00** (this does not include the 25% of the alleged unpaid wages, which amount Plaintiff has not specified in her pleadings).

DEFENDANT DEPLOYED SERVICES, LLC'S NOTICE OF REMOVAL
316019301v.2

### 5.    Waiting Time Penalties

48.    Plaintiff's Complaint alleges that Defendant failed to timely pay wages due, in violation of California Labor Code §§ 201-203.  Plaintiff alleges that Defendant "failed to pay Plaintiff and Class Members all wages earned prior to resignation or termination in accordance with Labor Code sections 201 or 202."  (Ex. A, ¶ 69.)

49.    As a result, Plaintiff's Complaint alleges that Defendant owes Plaintiff and other class members "waiting time penalties, interest, and their costs of suit."  (Id. at ¶ 73.)

50.    Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay.  *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

51.    The statute of limitations period for California Labor Code § 203 penalties extends back only three years from the date of filing of the complaint, to December 31, 2021.  *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats.1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty").

52.    It is also reasonable to assume that each employee waited over 30 days for payment of any allegedly unpaid wages.  *See Tajonar v. Echosphere*, LLC, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations").

DEFENDANT DEPLOYED SERVICES, LLC'S NOTICE OF REMOVAL

316019301v.2

53.    During the relevant three-year time period for waiting time penalties, from **December 31, 2021 to the present**, Defendant had approximately 1,016 non-exempt hourly employees in California who separated from employment with Defendant in California.  (McCormick Decl., ¶ 10.)

54.    Although Defendant disputes liability, a reasonable estimate of the amount in controversy for waiting time penalties is **$4,935,321.60**  [$20.24/hour * 8 hours/day[1] * 30 days * 1,016 former hourly employees].

### 6.    Wage Statement Penalties

55.    Plaintiff's Complaint alleges that "Defendants failed to comply with Labor Code section 226, subdivision (a) by adopting policies and practices that resulted in their failure, at times, to furnish Plaintiff and Class Members with accurate itemized statements that accurately reflect, among other things, gross wages earned; total hours worked; net wages earned; all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate; and the name and address of the legal entity that is the employer; and the name and address of the entity securing the services of the farm labor contractor who employed Plaintiff and Class Members, among other things."  (Ex. A, ¶ 77.)  Based on this alleged violation, Plaintiff claims that "Plaintiff and Class Members are entitled to recover $50 for the initial pay period during the period in which violation of Labor Code section 226 occurred and $100 for each violation of Labor Code section 226 in a subsequent pay period, not to exceed an aggregate $4,000.00 per employee)."  (Id. at ¶ 80.)

56.    Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee.  The statute of limitations for recovery of penalties under Labor Code § 226 is one year.  *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).  Plaintiff filed his

---

[1] The average shift length was approximately 8 hours per day.  (McCormack Decl. ¶ 10.)

316019301v.2

Complaint on April 20, 2023.  Therefore, the statutory period for a claim under California Labor Code § 226 runs from **December 31, 2023 to the present**.

57.    Defendant pays its non-exempt employees on a weekly basis.  (McCormick Decl., ¶ 8.)  Accordingly, there are 52 pay periods per year.  (Id.)

58.    During the period from December 31, 2023 to the present, Defendant employed approximately 765 non-exempt hourly California employees.  (McCormick Decl., ¶ 9.)  These 765 individuals worked approximately 22,228 weekly pay periods during this time period.  (Id.)  Thus, the amount in controversy for Plaintiff's wage statement claim is **$1,856,400.00**  [($50 for the 765 first pay periods) + ($100 for each of the subsequent pay periods, not counting pay periods that would cause an employee to exceed the $4,000 cap)].

### 7.    Attorneys' Fees

59.    Plaintiff also seeks attorneys' fees.  (Ex. A, Prayer for Relief.)  Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy").

60.    A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (*citing Brady*, 243 F. Supp. 2d at 1010-11); *Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

316019301v.2

61.    In a recent decision, the Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

62.    Indeed, the Ninth Circuit again very recently explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

63.    In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery

DEFENDANT DEPLOYED SERVICES, LLC'S NOTICE OF REMOVAL

approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund). Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of $3,183,660.88 in this case [$**12,734,643.52** amount in controversy * 0.25].

64.     Although Defendant denies Plaintiff's allegations that she or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a conservative estimate based on those allegations, the total amount in controversy is at least **$15,918,304.40**, including attorneys' fees. This total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

65.     Accordingly, because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

66.     To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

DEFENDANT DEPLOYED SERVICES, LLC'S NOTICE OF REMOVAL

316019301v.2

### 8. Summary of Amount in Controversy for Purposes of Removal

67.    In addition to the claims above, Plaintiff also alleges claims for unpaid overtime, minimum wages, paid sick leave, paid vacation time, reimbursements, uniform deposits, and unfair competition.  Even without considering these claims, Plaintiff's claims easily satisfy the amount in controversy requirement.  Assumptions based on the allegations in the Complaint for just the above-discussed claims, alone, easily put at issue the following amounts:

| Claim | Amount In Controversy By Plaintiff's Allegations |
|---|---|
| 1. Labor Code § 210 (not including 25% of the alleged unpaid wages) | $4,369,100.00 |
| 2. Labor Code § 226 | $1,856,400.00 |
| 3. Meal Period Claim | $786,910.96 |
| 4. Rest Period Claim | $786,910.96 |
| 5. Labor Code § 203 Claim | $4,935,321.60 |
| Sub-Total | $12,734,643.52 |
| 3. Attorneys' Fees (25%) (on the above claims only) | $3,183,660.88 |
| Total (on the above claims only) | $15,918,304.40 |

68.    Because diversity of citizenship exists, and the amount in controversy plainly exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2). This action is proper for removal to this Court pursuant to 28 U.S.C. § 1441(a).

### IV.    VENUE

69.    Venue lies in the United States District Court, Southern District of California pursuant to 28 U.S.C. §§ 84(d), 1441 and 1446(a). This action was originally in the Superior Court of the State of California, County of San Diego. The County of San Diego is within the jurisdiction of the United States District Court, Southern District of California.

DEFENDANT DEPLOYED SERVICES, LLC'S NOTICE OF REMOVAL

316019301v.2

## V.    NOTICE OF REMOVAL

70.    A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of San Diego, pursuant to 28 U.S.C. § 1446(d).

## VI.    PRAYER FOR REMOVAL

WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California.

DATED: February 7, 2025                          Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Ashley Stein*
         Andrew M. Paley
         Elizabeth M. Levy
         Ashley D. Stein

Attorneys for Defendant
DEPLOYED SERVICES, LLC

DEFENDANT DEPLOYED SERVICES, LLC'S NOTICE OF REMOVAL

316019301v.2